UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**NELSON FERNANDEZ**,

     Plaintiff,

vs.

**FERGUSON ENTERPRISES, LLC,
a foreign limited liability company,
and BUILD.COM, INC., d/b/a BUILD WITH
FERGUSON, a foreign for-profit corporation,**

     Defendants.

_____/

## **COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendant FERGUSON ENTERPRISES, LLC, a foreign limited liability company, and BUILD.COM, INC., d/b/a BUILD WITH FERGUSON, a foreign for-profit corporation, and alleges as follows:

1.     This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This also is an action for declaratory and injunctive relief, damages, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.* ("Rehab Act").

2.     This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA and the Rehab Act. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff NELSON FERNANDEZ is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").  Plaintiff also is expressly authorized to bring this case as an otherwise qualified individual with a disability under the Rehab Act, 29 U.S.C. §§794(a)(2) and 794(b)(3)(A), and under Section 505-f the Rehab Act which enforces Section 504 of the Rehab Act, 29 U.S.C. §§794 and 794a, incorporating the rights and remedies set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et seq*.

5.      Plaintiff is and at all relevant times has been a visually impaired and physically disabled person who has been diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). Because of his disease, Plaintiff is currently paralyzed in approximately 80% to 90% of his body as a whole and has limited use of his left hand.  Further, because of his disease, Plaintiff has developed optic neuritis and is visually disabled, with complete blindness in one eye and limited vision in the other eye.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).  Plaintiff also is an otherwise qualified individual with a disability who has been denied the benefits of a program or activity receiving federal financial assistance and is thus covered by the Rehab Act, 29 U.S.C. §794(a) and (b). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or the

recipients of federal financial assistance and/or their respective and associated websites are in compliance with the ADA, the Rehab Act, and any other applicable disability laws, regulations, and ordinances.

6.     Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Defendant FERGUSON ENTERPRISES, LLC ("Ferguson") is a foreign limited company authorized to do business and doing business in the State of Florida.  Defendant owns, operates, and/or controls bath, kitchen, and lightning galleries and showrooms, including the showroom located at 990 S. Rogers Circle, Suite 12, Boca Raton, Florida that Plaintiff had patronized and/or intended to patronize in the near future.  Defendant Ferguson also owns, leases, leases to, and/or operates a business in Florida that is the recipient of federal financial assistance

for the company as a whole within the meaning of the Rehab Act, 29 U.S.C§794(b)(3)(A)(i).  See Exhibit "A" attached hereto.

8.     Defendant BUILD.COM, INC. ("Build") is a foreign for-profit corporation that has at all relevant times done, and continues to do, substantial and not isolated business in the State of Florida, including in Palm Beach County Florida where Plaintiff resides, through its associated website, https://www.build.com (the "Build.com Website"), and its affiliated, authorized, associated, licensed, and/or franchised companies, which include Ferguson.  The Build.com Website has, at all relevant times, through contractual arrangements between Ferguson and Build, been directly linked to and featured on the separate website owned, operated and/or controlled by Ferguson -- https://www.fergusonshowrooms.com (the "Ferguson Website") -- and has at all relevant times operated and held itself out under the name "Build With Ferguson" for the purposes of selling Ferguson's merchandise and products.  Likewise, the Build.com website is directly linked to the Ferguson website and the Ferguson showrooms via a showroom locator feature that allows users to schedule appointments at the Ferguson physical showrooms to view  an purchase Fergusons' merchandise and products.  Accordingly, through the contractual arrangements and affiliation between Ferguson and Build and the direct links between the Ferguson Website and the Build.com Website, Ferguson and Build derive and receive substantial revenues, income, and financial and marketing benefits from each other.

9.     Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

10.     Plaintiff frequently accesses the internet.  Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available

on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

11.     At all times material hereto, Defendant Ferguson was and still is an organization that owns, operates, and/or controls bath, kitchen, and lightning galleries and showrooms under the name "Ferguson" Each of the Ferguson showrooms is, by appointment, open to the public.  As the owner, operator, and/or controller of the  public accessed showrooms, Defendant Ferguson is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

12.     Because Defendant Ferguson is a store open to the public, it is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulations, 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

13.     Defendant Ferguson also owns, controls, maintains, and/or operates the Ferguson Website.  One of the functions of the Ferguson Website is to provide the public information on the locations of Ferguson's showrooms that display, market and sell Ferguson's merchandise throughout the United States and within the State of Florida.  Ferguson also sells to the public its merchandise through the Ferguson Website via a direct link to the Build.com Website (operating as "Build With Ferguson"), which is owned, controlled, maintained, and/or operated by Ferguson's affiliated company, Build.   The Build.com Website thus acts as a critical point of sale for all of Ferguson's merchandise and products, which are also available for purchase in and ordering from Ferguson's physical showrooms.  Furthermore, the Ferguson Website allows purchasers the ability to apply online for financing and to make personalized appointments in the Ferguson showrooms

to view and purchase Ferguson's merchandise and products that are available for purchase online and through the physical showrooms..     14.     The Ferguson Website, via link to and direct association with the Build.com Website, also services Ferguson's physical showrooms by providing information on Ferguson's available merchandise, services, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to their customers.

15.     Because both the Ferguson Website and the Build.com Website allow the public the ability to secure information about Defendants' physical locations, apply for financing, purchase merchandise that also available for purchase in the physical showrooms, and sign up for an electronic emailer to receive exclusive online offers, benefits, invitations, and discounts, the Ferguson Website and Build.com Website are extensions of, and gateways to, the same goods, services, privileges, and advantages as are available in and from Defendants' physical showrooms, which are places of public accommodation under the ADA.  As an extension of and necessary service, privilege, and advantage provided by places of public accommodation as defined under the ADA, the Ferguson Website, together with the Build.com Website, are extensions of the services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses. Furthermore, the Ferguson Website, with its link to the Build.com Website,  is a necessary service and privilege of Defendants' physical showrooms in that, as a point of sale for Defendants' merchandise and products, it enables visitors to the Ferguson Website to make online purchases of Ferguson's merchandise and products that are also available for purchase in and through Ferguson's physical showrooms.

16.     Because the public can, through both the Ferguson Website and the Build.com Website, view and purchase Defendants' merchandise and products that are also offered for sale

in and through the physical showrooms, thus having the Build.com Website act as a critical point of sale for Defendants' merchandise and products also sold in and through the physical showrooms, arrange online for appointments at the physical showrooms to view and purchase Defendants' merchandise and products, arrange for online financing, and sign up for an electronic emailer to receive exclusive online offers, benefits, invitations, and discounts, the Website is an extension of, and gateway to the physical showrooms, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E).  As such, the Ferguson Website and connected/linked Build.com Website are necessary services, privileges, and advantages of Defendants' brick and mortar showrooms that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical showrooms.

17.    At all times material hereto, Defendants were and still are organizations owning, operating, and/or controlling the Ferguson Website and the Build.com Website.  Since the websites are open to the public through the internet and thus act as a point of sale for Ferguson merchandise and products sold at, in, and through the physical showrooms, the websites are necessary services, privileges, and advantages of Defendants' brick and mortar showrooms that must comply with all requirements of the ADA, must not discriminate against individuals with visual or physical disabilities, and must not deny those individuals the full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical showrooms. As such, Defendants have subjected themselves and the Ferguson Website and Build.com Website to the requirements of the ADA.

18.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the access barriers in Defendants' websites are removed or remedied, Defendants' physical showrooms and to check showroom hours and product pricing, review and schedule available purchase and design services, purchase products, arranged financing, and sign up for an electronic emailer to receive exclusive offers, benefits, invitations, and discounts for use at Defendant's websites or in Defendants' physical showrooms.  In the alternative, Plaintiff intends to monitor Defendants' respective websites in the near future, as a tester, to ascertain whether it has been updated to interact properly with screen reader software.

19.     The opportunity to shop and pre-shop Defendants' merchandise, arrange showroom appointments, arrange online financing, , and sign up for an electronic emailer to receive exclusive online offers, benefits, invitations, and discounts from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a physically and visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience. Defendants have not provided their business information in any other digital format that is accessible for use by blind and visually impaired individuals using screen reader software.

20.     Like many consumers, Plaintiff accesses a number of websites at a time to help plan his store visits, and to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare product features, services, discounts, promotions, and prices.

21.     During the month August 2021, Plaintiff attempted on a number of occasions to utilize Defendants' interlocked and linked websites to browse through the merchandise, services, and online offers being offered, to plan his showroom visits, to educate himself as to the available

merchandise, services, sales, discounts, and promotions  with the intention of making a purchase through the websites or at Defendants' local showroom.

22.     Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendants' interlocked and linked websites contains access barriers that prevent its free and full use by blind and visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

> a. Return to homepage/company logo button is mislabeled;
>
> b. Throughout the websites there are blocks of text that are not labeled to integrate with the screen reader as the cursor skips over this information and navigates to the next available header, button, or link;
>
> c. Site functions like the next and previous buttons are mislabeled as "link";
>
> d. The social media icons are mislabeled; e. The site's phone number to contact the

company lacks a proper description;

> f. The site's phone number to contact the company lacks a proper description;
>
> g. The shopping cart is mislabeled;
>
> h. The submenu is inaccessible when navigating with a keyboard; and
>
> i. Product price is not labeled to integrate with the screen reader.

23.     The Defendants' interlocked and linked websites also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the Website.

24.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on Defendants' interlocked and linked websites that would direct him to a webpage with contact

information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the websites.  However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on either the Ferguson Website or the Build.com Website.

25.     The fact that Plaintiff could not communicate with or within the Defendants' interlocked and linked websites left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, services, and promotions, as provided on the websites and at the physical showrooms to the non-visually disabled public.

26.     Plaintiff desires and intends, in the near future once the Defendants' interlocked and linked websites' access barriers are removed or remedied, to patronize Defendants' physical showrooms and to use the Build.com Website as a necessary extension, service, privilege, and advantage of the physical showrooms, but he is presently unable to fully do so, as he is unable to effectively communicate with Defendants' physical showrooms due to his severe visual disability and the websites' access barriers.  Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through their interlocked and linked websites due to his severe blindness and visual disability and the websites' access barriers.  Thus, Plaintiff, and others who are blind and visually disabled, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because Defendants' interlocked and linked websites clearly provide support for and are directly connected with Defendants' publicly accessible showrooms for their goods, services, operation, and use, and thus are necessary extensions, services, privileges, advantages,

and accommodations of Defendants' brick and mortar showrooms for the purchase of Defendants'

merchandise and products and the scheduling of Defendant's services, the websites must comply

with all requirements of the ADA, must not discriminate against individuals with disabilities, and

must not deny those individuals the same full and equal access to and enjoyment of the goods,

services, privileges, and advantages as afforded the non-visually disabled public both online and

in the physical showrooms, which are places of public accommodation subject to the requirements

of the ADA.  In addition, because Defendant Ferguson is a recipient of federal funds to the

company as a whole, Ferguson is also subject to the requirements of the Rehab Act and must not

discriminate against qualified or otherwise qualified individuals with disabilities in any and all of

its "programs and activities", including the Ferguson Website, which is directly linked to and

interlocked with the Build.com Website.

28.     On information and belief, Defendants have not initiated a Web Accessibility

Policy to ensure full and equal use of their respective websites by individuals with disabilities.

29.     On information and belief, Defendants have not instituted a Web Accessibility

Committee to ensure full and equal use of their websites by individuals with disabilities.

30.     On information and belief, Defendants have not designated an employee as a Web

Accessibility Coordinator to ensure full and equal use of the Ferguson Website and interlocked

Build.com Website by individuals with disabilities.

31.     On information and belief, Defendants have not instituted a Web Accessibility User

Accessibility Testing Group to ensure full and equal use of their interlocked and linked  websites

by individuals with disabilities.

32.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of their interlocked and linked websites by individuals with disabilities.

33.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

35.     Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

36.     Defendant have not created and instituted on their interlocked and linked websites a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have their websites, applications, and digital assets accessible to the visually disabled or blind community.

37.     The Ferguson Website and the interlocked and linked Build.com Website do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

38.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of their interlocked and linked websites to blind and visually disabled individuals who want the safety and privacy of purchasing Defendants' merchandise and products and scheduling Defendants' services offered on the websites from their homes.

39.     Thus, Defendants have not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, accommodations, programs, and activities provided by and through their interlocked and linked websites in contravention of the ADA.  In addition, Ferguson has not provided full and equal access to and enjoyment of the goods, services,

facilities, privileges, advantages, accommodations, programs, and activities provided by and through the Ferguson Website in violation of the Rehab Act.

40.    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.  Likewise, under the Rehab Act, companies that receive federal financial assistance as a whole must not discriminate against disabled persons and are required to make all the facilities, programs, or activities they operate, including their websites, fully and readily accessible to persons with disabilities.

41.    The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the Ferguson Website and the interlocked and linked Build.com Website at issue in the instant action.  In addition, Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects and activities receiving federal assistance " ... be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3).

42.    Defendants are, and at all relevant times have been, aware of the barriers to effective communication within their interlocked and linked websites which prevent individuals who are visually disabled from the means to comprehend information presented therein.

43.    Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to their interlocked and linked websites.

44.     The barriers that exist on the Ferguson Website and its interrelated and linked Build.com Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with its website access and operation.

46.     Notice to Defendants is not required because of Defendants' failures to cure the violations.

47.     Enforcement of Plaintiff's rights under the ADA and the Rehab Act is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA (BOTH DEFENDANTS)

49.     Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.     Pursuant to 42 U.S.C. §12181(7)(E), Defendants are a public accommodation under the ADA because they own, operate, and/or control physical showrooms and the their connected and linked websites and are thus subject to the ADA.

51.     Pursuant to 42 U.S.C. §12181(7)(E), the Ferguson Website and the interlocked and linked Build.com Website  are covered under the ADA because they together provide the general public with the ability to locate and learn about Defendants' showrooms purchase Ferguson merchandise and products that are also available for purchase in and through the physical

showrooms, arrange in-showroom appointments, arrange online financing to purchase Ferguson merchandise and products that are available to purchase through the showrooms, and sign up for an electronic emailer to receive exclusive online offers, benefits, invitations, and discounts. Defendants' interlocked and linked websites thus are, together, extensions of, gateways to, and necessary services, privileges, and advantages of Defendants' physical showrooms, one or more of which Plaintiff intended to patronize.  Further, Defendants' websites also serve to augment the physical showrooms by providing the public information on the locations of the showrooms and by educating the public as to Defendants' available merchandise and products sold, and services offered, through the websites and in the physical showrooms.  Defendants' interlocked and linked websites thus are necessary for Plaintiff to fully and equally enjoy and have access to all of the goods, services, privileges, and advantages being offered by Defendants both online and in the physical showrooms.

52.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendants' interlocked and linked websites must comply with the ADA, but they do not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of Defendants' respective websites, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendants have made available to the public on their websites and in the  publicly accessible showrooms in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq.*

57.     Defendants' interlocked and linked websites were subsequently visited by Plaintiff's expert in August and November 2021, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendants thus have made insufficient material changes or improvements to their interlocked and linked websites to enable their full and equal use, enjoyment, and accessibility for blind and visually disabled persons such as Plaintiff.  Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of their respective websites to blind and visually disabled individuals, nor have they posted on the websites conspicuous and effective "accessibility" notices, statements, or policies to provide blind

16

and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the websites. Defendants thus have failed to make reasonable modifications in their policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities in violation of 28 C.F.R. §36.302.  The lack of functional, viable, and effective "accessibility" notices, policies, or statements on the websites and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "B" and the contents of which are incorporated herein by reference, continue to render Defendants' interlocked and linked websites not fully accessible to users who are blind and visually disabled, including Plaintiff.

58.    More violations may be present on other pages of the Ferguson Website and its linked Build.com Website, which can and will be determined and proven through the discovery process in this case.

59.    Further, Defendants' interlocked and linked websites do not offer or include the universal symbol for the disabled that would permit disabled individuals to access the websites' accessibility information and accessibility facts.

60.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make Defendants' interlocked and linked websites accessible would neither fundamentally alter the nature of Defendants' businesses nor would it result in an undue burden to Defendants.

61.     Defendants have violated the ADA – and continue to violate the ADA – by denying access to their respective websites, and hence the connected physical showrooms, by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

62.     The ADA require that public accommodations and places of public accommodation ensure that communication is effective.

63.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

65.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66.     As alleged hereinabove, the Ferguson Website and the Build.com Website have not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violate the ADA.

67.   As a direct and proximate result of Defendants' failure to provide ADA compliant websites that are extensions, services, privileges, and advantages of, and critical and necessary points of sale and financing for, Defendants' brick and mortar showrooms, Plaintiff has suffered an injury in fact by being denied communication with and full access to and enjoyment of the goods, services, privileges, and advantages of Defendants' physical showrooms.

68.   Because of the inadequate development and administration of Defendants' interlocked and linked websites, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69.   Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a)   Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Ferguson Website and Build.com Website to a functional statement as to the Defendants' policies to ensure persons with visual disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered in Defendants' physical showrooms through the websites.

b)   Require Defendants to take the necessary steps to make their respective websites readily accessible to and usable by blind and visually disabled users, and during that time period prior to the websites being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the websites until such time that the requisite modifications are made, and

c)   Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the websites for purposes of viewing and locating Defendants' physical showrooms and becoming informed of and purchasing

Defendants' merchandise online and through the physical showrooms, and during that time period prior to the websites being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the websites and the physical showrooms.

70.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that the Ferguson Website and the Build.com Website are in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update their websites, and continue to monitor and update the websites on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the websites and effectively communicate with the websites to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within their websites wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations.  Such

---

[1]  or similar.

a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the websites;

D. An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendants, by a date certain, to evaluate their policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to their websites;

F. An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for their websites to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' respective websites to be fully accessible to the visually disabled;

H. An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, their websites on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of their websites to identify any instances where the websites are no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further

directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendants, by a date certain, to make publicly available and directly link from their websites' homepages, statements of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the websites and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

## COUNT II – VIOLATION OF THE REHABILITATION ACT AGAINST FERGUSON

71.     Plaintiff re-alleges paragraphs 1 through 47 and 57 through 60 as if set forth fully herein.

72.     As more specifically set forth above, Defendant Ferguson has violated the Rehab Act by failing to interface the Ferguson Website with software utilized by visually impaired individuals. Thus, Ferguson has violated the Rehab Act either directly or through contractual, licensing or other arrangements with respect to Plaintiff and other similarly situated individuals solely by reason of their disability:

a)      By excluding Plaintiff from participation in and denying him the benefits of or subjecting him to discrimination under any program or activity receiving federal financial assistance, Defendant Ferguson has violated the Rehab Act;

b)      Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects, and activities receiving federal assistance " ... be carried out in a manner

consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. Section 701 (c)(3);

c)      Defendant Ferguson is a recipient of federal financial assistance as a whole bringing it under the Rehab Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities";

d)      Section 504 of the Rehab Act prohibits recipients of federal funding from discriminating against disabled persons and requires that facilities, programs, or activities operated by a federally funded entity be readily accessible to persons with disabilities;

e)      The Rehab Act defines "program or activity" as all of the operations of the entire corporation, partnership, or other private organization, or sole proprietorship which receives federal financial assistance as a whole. The Ferguson Website and its content is a "program or activity" within the meaning of the Rehab Act, 29 U.S.C. §794(b)(3)(A)(i);

f)      Plaintiff was denied access to the Ferguson Website solely by reason of his disability. This denial of access to Defendant's "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity, and denied Plaintiff the benefits of the Ferguson Website, a service available to those persons who are not blind. As of this filing, the Ferguson Website remains inaccessible to qualified or otherwise qualified persons;

g)      The international website standards organization, WC3, has published widely accepted guidelines ("WCAG 2.0" and "WCAG 2.1 AA") for making digital content accessible to individuals with disabilities. These guidelines have been endorsed the United States Department of Justice and by Federal Courts and the United States Access Board; and,

h)      Defendant Ferguson has engaged in unlawful practices in violation of the Rehab Act since it launched the Ferguson Website. These practices include, but are not limited to, denying Plaintiff, an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of communication barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by Defendant Ferguson.

73.     Defendant Ferguson has acted with deliberate indifference to the applicable provisions of the Rehab Act as to the unlawful practices described herein because Defendant Ferguson was and is fully aware of the inaccessible features of the Ferguson Website and has failed to remediate the Ferguson Website to make it equally accessible to persons with visual disabilities. Defendant Ferguson knew that harm to a federally protected right was substantially likely, yet and it failed to act on that likelihood when it failed to remediate the Ferguson Website.  Defendant Ferguson knew this, and on information and belief, a person with authority with Defendant Ferguson to order the remediation of the Ferguson Website made a deliberate choice not to remediate and to continue to offer the inaccessible Ferguson Website to its customers and potential customers knowing that the Website was, and continues to be, inaccessible to the blind and visually disabled.

74.     Plaintiff would like to be a customer at Defendant Ferguson's brick and mortar showroom but before he goes to the showroom, he would like to determine what is available for his purchasing, what promotions are being offered, what services are being offered, and what new items are currently available.  In that regard, Plaintiff continues to attempt to utilize the Ferguson Website and/or plans to continue to attempt to utilize the Ferguson Website on a regular basis to make selections for purchasing and scheduling of design services online or in the store.

75.     Plaintiff is continuously aware of the violations at the Ferguson Website and is aware that it would be a futile gesture to attempt to utilize the Ferguson Website as long as those violations exist unless he is willing to suffer additional discrimination.

76.     Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at the Ferguson Website. By continuing to operate the Website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the benefits of -Ferguson's programs and activities available to the general public. By encountering the discriminatory conditions at the Ferguson Website and knowing that it would be a futile gesture to attempt to utilize the Ferguson Website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same store or website readily available to the general public and is deterred and discouraged from doing so. By maintaining a website with access and Rehab Act violations, Ferguson deprives Plaintiff the equal access to, and same participation in and benefits of its programs and activities as the non-visually disabled public.

77.     Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Ferguson's discrimination until Ferguson is compelled to comply with the requirements of the Rehab Act.

78.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Ferguson's non-compliance with the Rehab Act with respect to the Ferguson Website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the Rehab Act by Ferguson. Plaintiff desires to access the Ferguson Website to avail himself of the benefits, therein, and/or to assure himself that the

Ferguson Website is in compliance with the Rehab Act so that he and others similarly situated will have full and equal enjoyment of the Website without fear of discrimination.

79.     Plaintiff and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the Rehab Act as requested herein.

80.     Plaintiff is without adequate remedy at law and is suffering irreparable harm based on the facts alleged hereinabove.

81.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs, and litigation expenses from Ferguson pursuant to the Rehab Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant Ferguson for the following relief:

A.     A declaration that determines that the Ferguson Website at the commencement of the subject lawsuit was in violation of the Rehabilitation Act;

B.     A declaration that the Ferguson Website continues to be in violation of the Rehabilitation Act;

C.     A declaration that Ferguson has violated the Rehabilitation Act by failing to monitor and maintain the Ferguson Website to ensure that it is readily accessible to and usable by persons with visual disabilities;

D.     Issuance of an Order directing Ferguson to alter the Ferguson Website to make it accessible to, and useable by, individuals with visual disabilities to the full extent required by the Rehab Act;

E.     Issuance of an Order directing Ferguson to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so as to allow Ferguson to undertake and complete corrective and remedial procedures;

F.      Issuance of an Order directing Ferguson to continually update and maintain the Ferguson Website to ensure that it remains fully accessible to and usable by visually disabled individuals;

G.      An award to Plaintiff of his compensatory damages for Ferguson's willful and deliberately indifferent violations of the Rehab Act;

H.      Award Plaintiff his attorney's fees, costs, and litigation expenses pursuant to 29 U.S.C. §794a; and

I.      Award such other relief as the Court deems just and proper, and/or is allowable under the Rehabilitation Act.


DATED:  January 6, 2022

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


By:___*s/ Roderick V. Hannah*___
        RODERICK V. HANNAH
        Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By:___*s/ Pelayo M. Duran*___
        PELAYO M. DURAN
        Fla. Bar No. 0146595